IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

CORNELL TROTTER,

   Plaintiff,

vs.          No. 08-2053-STA-dkv

CARGILL, INC.,

   Defendant.

---

ORDER GRANTING DEFENDANT CARGILL'S MOTION TO STRIKE
(DOCKET ENTRY 39)

---

On March 18, 2009, Defendant Cargill, Incorporated ("Cargill") filed a motion for summary judgment. (Docket Entry ["D.E." 26.)  On April 15, 2009, Plaintiff Trotter filed a response to Defendant's motion. (D.E. 35.)  Plaintiff's response includes seven affidavits.[1] (Id. at 6-12.)  On May 27, 2009, Defendant Cargill filed a motion to strike the affidavits,[2] contending that the affidavits directly contradict the witnesses deposition testimony given on February 9, 10, and 11, 2009. (D.E. 39 and Exhibits A-I.)  On June 25, 2009, Plaintiff filed a response to Defendant's motion to strike.

---

   [1]  Plaintiff Trotter attached the affidavits of Francois Johnson, Tomeka Winston, Connie Seay, Patricia Coburn, Keith Howard, Avery Doss, and Terry Lewis.

   [2]  Defendant's motion addresses two additional affidavits, which were not attached as exhibits to Plaintiff Trotter's response: Vincent Mickens and Cornell Trotter. Those additional affidavits were attached as exhibits to responses filed by Plaintiff Coburn in Case No. 08-2055-STA/dkv; by Plaintiff Lewis in Case No. 08-2056; and by Plaintiff Seay in Case No. 08-2058.

I.   Affidavits and Deposition Testimony

### Affidavit of Francois Johnson

In the affidavit attached to Plaintiff's response, Johnson states, in pertinent parts that he is "a witness to the sign carved in the plastic [portable outdoor toilet] that said 'Kill All Niggers,' "that [he] took pictures of the sign and gave a copy to the attorney for Cargill during [his] deposition," "that all the employees complained to management on a daily basis before they had it removed," "this took place between the time of filing the TOSHA complaint and the filing of the lawsuit," that he is "a witness to Mr. Adams addressing myself and all the African Americans as boys or girls more than once," and he is "a witness that Mr. Adams stated he would work myself and all the other African Americans like mules because they did not deserve lunch breaks." (D.E. 35, p. 6, paras. 3-7.)

### Deposition Testimony of Francois Johnson

During Johnson's deposition on February 10, 2009, Johnson testified that Martin Crowder and Tim Adams harassed him by requiring him to work in the area he alleged contained asbestos. (D.E. 39-3, pp. 136:22-139:7.)   Johnson testified "[t]o the best of [his] knowledge" that was all he could recall and could think of nothing to refresh his recollection. (D.E. 39-3, Exhibit A, p. 139:2-7.)

### Affidavit of Tomeka Winston

Winston states in the affidavit attached to Plaintiff's response, in pertinent part that "all the employees complained to management on a daily basis before they had it removed" without specifying what "it" was. Winston also states "this took place

between the time of filing the TOSHA complaint and the filing of the lawsuit." (D.E. 35, p. 7, paras. 3-4.)

### Deposition Testimony of Tomeka Winston

Tomeka Winston was deposed on February 10, 2009, and June 30, 2009. Copies of those depositions were filed in Winston v. Cargill, et al., No. 08-2059-STA/dkv. (See id; D.E. 91-2, pp. 12-69.) During the second deposition on June 30, 2009, Winston was asked how Cargill discriminated against her.  She replied that she was discriminated against because Cargill only sent blacks to work in those areas containing asbestos. (Id.; p. 55:16-22.) The two depositions do not contain allegations of any other act of racial discrimination.

### Affidavit of Connie Seay

In the affidavit attached to Plaintiff's response, Seay states, in pertinent parts that "all employees complained to management on a daily basis before they had it removed" without specifying what "it" was. Seay also states that she is "a witness to Mr. Adams addressing myself and all the African Americans as boys or girls more than once" and she is a witness "that Mr. Adams stated he would work myself and all the other African Americans like mules because they did not deserve lunch breaks." (D.E. 35, p. 8, paras. 3, 5-6.)

### Deposition Testimony of Connie Seay

Seay testified at her deposition on February 10, 2009, that Amanda Jordan would "[s]ay, hey, girl and all that type of stuff. And one time me and Patricia was in the break room and she said, hey, girl, and all that." (D.E. 39-3, pp. 81:21-82:15.) Seay testified that she (Seay) also called people by "girl" but Jordan "meant something by it...she was upset and mad at Tomeka and Vincent...she

used to call me Ms. C... She was mean about it." (D.E. 39-3, p. 83:1-16.) Seay testified that she complained to Vincent Mickens, Amanda Jordan left, and no one else said any kind of racially offensive thing to her. (D.E. 39-3, Exhibit B, pp. 84:16-85:18.)

### Affidavit of Patricia Coburn

In the affidavit attached to Plaintiff's response, Coburn states, in pertinent parts that she is "a witness to the sign carved in the plastic that said 'Kill All Niggers,' and that [she] took pictures of the sign and gave a copy to the attorney for Cargill during [her] deposition," "that all the employees complained to management on a daily basis before they had it removed," "this took place between the time of filing the TOSHA complaint and the filing of the lawsuit," that she is "a witness to Mr. Adams addressing myself and all the African Americans as boys or girls more than once," and she is "a witness that Mr. Adams stated he would work myself and all the other African Americans like mules because they did not deserve lunch breaks." (D.E. 35, p. 9, paras. 3-7.)

### Deposition Testimony of Patricia Coburn

On February 10, 2009, Coburn testified that Tim Adams called her names which she considered racial remarks, not harassment. (D.E. 39-3, Exhibit C, pp. 84:20-85:16.) Coburn testified that an employee named Amanda made racial remarks once by coming in the break room and saying "hey girl, how you doing," but Amanda no longer works at Cargill. (Id. at 85:19-86:5.) Coburn testified that no on else made racial remarks or harassed her in any way. (Id. at 86:6-10; 91:17-23.) She clarified that Adams called her a girl in 2005 or 2006 when they were loading railcars and also on the radio. (Id. at 87:6-23.)

4

Coburn believed those incidents to be racially motivated because Adams knew her name. (Id. at p. 88:1-2.) Adams also once told Coburn that either she or a male employee named Terry Lewis could massage his feet, which she found humiliating. (Id. at 88:9-89:25.) Coburn testified that Adams also cursed her out, saying "what the hell are you worrying about it for. It ain't your food" when she told an employee he should eat his lunch at some place other than the elevator office because of the dust. (Id. at 90:5-23.) Coburn testified that the foregoing incidents were every way in which she believed she was harassed because of her race. (Id. at 93:4-8.) Defense counsel then asked Coburn why the picture of the language in the outdoor toilet was part of Coburn's production and Coburn replied "[b]ecause this is the type of things that we take to them and don't never [sic] get answers on. We was [sic] afraid because we worked right there at the place. And it said: 'Kill all niggers.' You know, we addressed that." (Id. at 117:10-25.)  Coburn testified that she did not take the picture, did not know who took the picture, did not recall going in the outdoor toilet or seeing the words, and did not complain to anyone about it. (Id. at 118:1-119:19.) She testified that Vincent Mickens gave her the picture and she had no idea who put those words on the outdoor toilet. (Id. at 118:5-6; 121:4-6.)

### Affidavit of Keith Howard

In the affidavit attached to Plaintiff's response, Howard states, in pertinent parts that he is "a witness to the sign carved in the plastic that said 'Kill All Niggers,' and that [he] took pictures of the sign and gave a copy to the attorney for Cargill during [his] deposition," "that all the employees complained to

management on a daily basis before they had it removed," "this took place between the time of filing the TOSHA complaint and the filing of the lawsuit," that he is "a witness to Mr. Adams addressing myself and all the African Americans as boys or girls more than once," and he is "a witness that Mr. Adams stated he would work myself and all the other African Americans like mules because they did not deserve lunch breaks." (D.E. 35, p. 10, paras. 3-7.)

<u>Deposition Testimony of Keith Howard</u>

On February 11, 2009, Howard testified that he got the picture from Vincent Mickens, never saw the sign, and never complained to anyone about it. (D.E. 39-3, Exhibit D, p. 95:13-97:8.)  Howard testified that he believed he was subjected to racial harassment at Cargill because Tim Adams called him boy on more than one occasion a year or two ago, but he never heard anyone else called boy." (<u>Id.</u> at 65:1-67:11.) Howard also testified that Adams called him ignorant and that was all he could think of that was racially harassing or derogatory. (<u>Id.</u> at 67:15-68:18.) Howard also testified Amanda called him and other employees boys, but he did not recall what her position was with Cargill. (<u>Id.</u> at 68:21-70:22.)

<u>Affidavit of Avery Doss</u>

In the affidavit attached to Plaintiff's response, Doss states, in pertinent parts that he is "a witness to the sign carved in the plastic that said 'Kill All Niggers,' and that [he] took pictures of the sign and gave a copy to the attorney for Cargill during [his] deposition," "that all the employees complained to management on a daily basis before they had it removed," "this took place between the time of filing the TOSHA complaint and the filing of the lawsuit,"

that he is "a witness to Mr. Adams addressing myself and all the African Americans as boys or girls more than once," and he is "a witness that Mr. Adams stated he would work myself and all the other African Americans like mules because they did not deserve lunch breaks." (D.E. 35, p. 11, paras. 3-7.)

<u>Deposition Testimony of Avery Doss</u>

On February 9, 2009, Doss testified that he was subjected to a couple of incidents of racial harassment by Joe Sparks and Tim Adams, but he addressed the incidents and "nipped [the behavior] in the bud." (D.E. 39-3, Exhibit E, p.100:1-103:3.) Doss stated that he was not present when the statement in the complaint, that Adams stated he would work them like mules, was made. (<u>Id.</u> at 103:7-14.) When asked about the photograph in the production documents, Doss testified that he did not take the photograph, could not remember when the incident happened, did not complain about it, and did not know who wrote the offensive language. (<u>Id.</u> at 104:12-105:24.)

<u>Affidavit of Terry Lewis</u>

In the affidavit attached to Plaintiff's response, Lewis states, in pertinent parts that he is "a witness to the sign carved in the plastic that said 'Kill All Niggers,' and that [he] took pictures of the sign and gave a copy to the attorney for Cargill during [his] deposition," "that all the employees complained to management on a daily basis before they had it removed," "this took place between the time of filing the TOSHA complaint and the filing of the lawsuit," that he is "a witness to Mr. Adams addressing myself and all the African Americans as boys or girls more than once," and he is "a witness that Mr. Adams stated he would work myself and all the other

African Americans like mules because they did not deserve lunch breaks." (D.E. 35, p. 12, paras. 3-7.)

<u>Deposition Testimony of Terry Lewis</u>

On February 11, 2009, Terry Lewis testified that Tim Adams came to the picnic table and asked him and Patricia Coburn "how are you girls doing." (D.E. 39-3, Exhibit F, pp. 54:9-55:23.) When Lewis was asked why he thought the comment was racial, Lewis replied, "[b]ecause I'm not female." (<u>Id.</u> at 56:1.) Lewis also testified that Adams asked him and Patricia Coburn "to take [his] shoes off and rub [his] foot" which he believed was racially motivated "[b]ecause he have [sic] a wife. Why should he come in there and say one of us be [sic] rubbing his feet when he can go get her to do it." (<u>Id.</u> at 56:4-57:18.) Lewis testified that was all the racial comments Tim Adams made to him and al the racial discrimination and behavior that he had witnesses. (<u>Id.</u> at 57:19-58:2.)

II.   <u>Law & Analysis</u>

A party cannot create a genuine issue of material fact to defeat summary judgment merely by submitting an affidavit that contradicts earlier deposition testimony. <u>See</u> <u>e.g.</u>, <u>Cleveland v. Policy Mgmt. Sys. Corp.</u>, 526 U.S. 795, 806 (1999); <u>accord</u> <u>Aerel, S.R.L. v. Pcc Airfoils, L.L.C.</u>, 448 F.3d 899, 906 (6th Cir. 2006); <u>Reed v. Sears, Roebuck & Co.</u>, 790 F.2d 453, 460 (6th Cir. 1986). "[T]he utility of summary judgment as a procedure for screening out sham fact issues would be greatly undermined if a party could create an issue of fact merely by submitting an affidavit contradicting his own prior testimony." <u>Aerel</u>, 448 F.3d at 908(quoting <u>Franks v. Nimmo</u>, 796 F.2d 1230, 1237 (10th Cir. 1986).

To determine if an affidavit should be inadmissible in such circumstances, a district court "must first determine whether the affidavit directly contradicts the nonmoving party's prior sworn testimony." Id.   "A directly contradictory affidavit should be stricken unless the party opposing summary judgment provides a persuasive justification for the contradiction." Id. Here, the affidavits do directly contradict the deposition testimony and Plaintiff has offered no explanation, instead contending that "the defendant is entitled to challenge the statements under cross-examination and Plaintiff['s] declarants have an opportunity to deny or explain the technical or clerical errors in the affidavits." (D.E. 43, p. 2.)   Plaintiff Trotter then reiterates the statements contained in the affidavits without addressing the sworn deposition testimony which contradicts those affidavits.

The Sixth Circuit discussed factors for determining whether a party has attempted to create a sham issue of genuine material fact. The existence of a sham fact issue turns on "whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain." Aerel, 448 F.3d at 980 (quoting Franks, 796 F.2d at 1237).

The Court concludes no reasonable jury could credit the testimony in the affidavits based upon the deposition testimony. The affiants had access to the evidence contained in the affidavits before their deposition testimony. With the exception of Winston's

9

affidavit, the affidavits were made after the deposition testimony. Plaintiff Trotter contends that the contradictory statements contained in the affidavits are merely impeachment evidence for trial.  The Court disagrees. The deposition testimony shows that the affidavits are false and some of the employees did not even understand the affidavits they were signing. For these reasons the Court GRANTS Defendant Cargill's motion to strike (D.E. 39) the affidavits of  Johnson, Winston, Seay, Coburn, Howard, and Lewis which are attached to Plaintiff's response to the Defendant's motion for summary judgment.

     IT IS SO ORDERED this 22nd day of March, 2010.

                              **s/ S. Thomas Anderson**
                              S. THOMAS ANDERSON
                              UNITED STATES DISTRICT JUDGE